IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HARTFORD CASUALTY INS. CO., | : | Case No. 2:12-CV-00369 |
| | : | |
| Plaintiff, | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| v. | : | |
| | : | |
| BLUEMILE, INC., | : | Magistrate Judge Elizabeth Deavers |
| | : | |
| Defendant. | : | |

### ORDER

This matter is before the Court on Defendant Bluemile, Inc.'s ("Defendant" or "Bluemile") Motion to Dismiss Plaintiff's Complaint for Declaratory Judgment. (Doc. 8.) For the foregoing reasons, Defendant's Motion is **GRANTED** and this action hereby **DISMISSED.**

### I. BACKGROUND

1. Factual History

Defendant Bluemile owns a Columbus data center that provides clients with cloud services, network services, data hosting, and voice (phone) services. (*Complaint*, Doc. 1, ¶ 8.) Plaintiff Hartford Casualty Insurance Company ("Plaintiff or "Hartford") issued Defendant an insurance policy, Policy No. 33 SBA VH9257 (the "Policy"), covering business interruption ("BI") and extended business interruption ("EBI") losses for the period of July 8, 2010 to July 8, 2011. (*Id*. at ¶¶ 6, 11.)

On February 10, 2011, Bluemile hired Atlas Industrial Contractors, Ltd. ("Atlas") to perform electrical services at its data center, an insured location under the Policy. (*Id*. at ¶ 9.) At approximately 7:30 a.m., an action by the Atlas employee on site caused an electrical surge that created a short in Bluemile's power distribution system, causing Bluemile's computer

networking services to fail temporarily. Bluemile's business operations were restored approximately two hours later, at 9:45 a.m. Bluemile alleges, however, that the power surge created unstable memory in its network devices and other lingering problems.  (*Id*.; *Bluemile State Court Complaint*, Doc. 8, Att. 1.)

Bluemile submitted a claim to Hartford for income losses resulting from the business interruption. (Doc. 1 at ¶ 10.) Bluemile and Hartford disagree about the recovery to which Bluemile is entitled under the Policy.  Bluemile asserts that it experienced extended business interruption losses in an undetermined amount in excess of seven million dollars, and is entitled to recovery up to the policy limit of $5,213,000. As Defendant interprets the Policy, the contract does not restrict the duration of EBI coverage. (Doc. 8 at 4.) Hartford, in contrast, asserts that the Policy limits EBI coverage to a period of 90 days after business operations resume.   Hartford paid Bluemile $514,898 for the 90 day period for which it did not dispute coverage. (Doc. 1 at ¶ 7.)  The parties agreed that this payment would not prejudice the rights or defenses of either insurer or insured. (*Id*.) Bluemile does not concede that that its coverable losses in the 90-day period were limited to the $514,898 already paid. (Doc. 8 at 6.)

2. Procedural History

Bluemile asserts that, on March 5, 2012, after several attempts to resolve the dispute over the duration of EBI coverage through mediation and other informal communications, counsel for Bluemile sent Harford's counsel notice that it would file suit if Hartford did not pay Bluemile's claim within forty-five days. (*Rutter Dec*., Doc. 13, Exhibit 1, ¶¶ 2-4.)  Bluemile further asserts that counsel for Bluemile and Hartford subsequently had several conversations regarding possible ways to resolve the dispute between their clients.  (*Id*. at ¶ 5.) In late April, counsel for

Bluemile attests that he informed Hartford's counsel that Bluemile would "probably" file its state court suit against Hartford and Atlas sometime after April 24, 2012. (*Id*. at ¶ 6.)

On April 27, 2012, Hartford filed a Complaint against Bluemile in this Court, seeking declaratory judgment as to the duration of EBI coverage under the Policy. (Doc. 1.) Atlas is not party to this action.

On May 1, 2012, Bluemile filed suit against Hartford and Atlas in the Court of Common Pleas for Franklin County, Ohio (the "State Court Action"). (*See Bluemile State Court Complaint*, Doc. 8, Att. 1.)[1] In the State Court Action, Bluemile asserted a negligence claim against Atlas and brought declaratory relief, breach of contract, and lack of good faith claims against Hartford. On May 4, 2012, apparently not realizing that it had already been sued by Bluemile, Atlas sued Bluemile, also in the Court of Common Pleas for Franklin County, for unpaid fees.[2] Atlas's case was later consolidated with the earlier State Court Action.[3]

Bluemile now moves to dismiss Hartford's federal Complaint for lack subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 8.) Bluemile argues that, in light of the pending State Court Action, the principles governing discretionary jurisdiction in a Declaratory Judgment Action, as well as the principles of abstention, dictate against exercising federal jurisdiction in this case. Hartford opposes the Motion to Dismiss. (Doc. 12.)[4]

---

[1] The State Court Action is captioned *Bluemile, Inc. v. Atlas Industrial Contractors, Ltd., et al.*, Case No. 12 CV 005597.
[2] Atlas's action was initially filed in the Franklin County Court of Common Pleas as Case No. 12 CV 005768.
[3] There is no dispute that service and notice of all pending actions and pleadings was proper.
[4] Hartford moved to dismiss or alternatively sever the claims against it in the State Court Action in light of Hartford's declaratory judgment filing in this Court. Common Pleas Judge Stephen McIntosh denied Hartford's Motion and stayed the claims against Hartford pending this Court's decision on Bluemile's Motion to Dismiss.

## II. LAW AND ANALYSIS

The Declaratory Judgment Act (the "Act") provides that, "[i]n a case of actual controversy within its jurisdiction[,] ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Supreme Court has indicated that the Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995). Thus, "Congress 'created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.'" *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (quoting *Wilton*, 515 U.S. at 288).  Moreover, "[t]his language affords the district court 'discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.'" *Travelers Indem. Co. v. Bowling Green Prof'l Assocs.*, 495 F.3d 266, 271 (6th Cir. 2007) (quoting *Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n,* 481 F.3d 414, 421 (6th Cir. 2007)).

In determining whether to exercise jurisdiction pursuant to the Declaratory Judgment Act, courts in the Sixth Circuit consider the five factors articulated in *Grand Trunk W. R.R. Co. v. Consol. Rail Co.,* 746 F.2d 323, 326 (6th Cir. 1984):

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Travelers*, 495 F.3d at 271 (formatting altered in original) (quoting *Grand Trunk,* 746 F.2d at 326). *See also Scottsdale*, 513 F.3d at 554. The Court examines each of these factors in turn.

### 1. Settlement of the Controversy

The first *Grand Trunk* factor considers whether the declaratory judgment action would settle the controversy. Here, Bluemile argues that a declaratory judgment in the present case will not settle the entire controversy between Bluemile and Hartford because, even if the Court were to grant the requested declaratory relief limiting the duration of EBI coverage, the amount owed by Hartford will remain in dispute. Hartford counters that the dispute between Bluemile and Hartford will be resolved in its entirety because the Policy permits any disagreement regarding the amount of a loss to be resolved through third-party appraisal. (Doc. 12 at 5 n.1).

The Sixth Circuit has developed "[t]wo lines of precedent … in [its] jurisprudence regarding the consideration of this first factor in the context of an insurance company's suit to determine its policy liability." *Scottsdale*, 513 F.3d at 555. One line of cases "has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Id.* (citing *West Am. Ins. Co. v. Prewitt,* 208 Fed.Appx. 393, 396 (6th Cir. 2006) (unpublished); *Northland Ins. Co. v. Stewart Title Guar. Co.,* 327 F.3d 448, 454 (6th Cir. 2003); *Allstate Ins. Co. v. Green,* 825 F.2d 1061, 1066 (6th Cir. 1987); *State Farm Fire & Cas. Co. v. Odom,* 799 F.2d 247, 250 n. 1 (6th Cir. 1986)). A second line of cases "has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Scottsdale*, 513 F.3d at 555 (citing *Travelers,* 495 F.3d at 272 ("Granting the declaratory relief sought by Evanston and

5

Travelers settles the scope of the insurance coverage under the respective policies and clarifies their obligation to defend Bowling Green in the state court action, but it does nothing to 'clarify the legal relationship' between the other parties."); *U.S. Fire Ins. Co. v. Abex Aluminum, Inc.,* 161 Fed.Appx. 562, 565 (6th Cir. 2006) (unpublished); *Bituminous Cas. Corp. v. J & L Lumber Co.,* 373 F.3d 807, 814 (6th Cir. 2004); *Omaha Prop. & Cas. Ins. Co. v. Johnson,* 923 F.2d 446, 448 (6th Cir. 1991); *Odom,* 799 F.2d at 251 (Merritt, J. dissenting); *Grand Trunk,* 746 F.2d at 326 ("The instant action does not involve an independent dispute because it arises from and affects a pending Illinois lawsuit. It would not clear up the legal issues in that case.")).

Here, the facts of this action comfortably situate the dispute between Hartford and Bluemile with this second line of cases. Although a declaratory judgment from this Court would settle the duration of the EBI period, it would not establish the amount of liability, a question that *is* at issue in the State Court Action. And while the Policy permits disputes over the amount of business income losses to be settled by appraisal, Atlas – which has a compelling interest in any determination of damages given the negligence and potential indemnification claims against them – would not be party to that process. Thus, at best, proceeding with a declaratory judgment action to which Atlas is not a party will result in piecemeal litigation; at worst, it will prejudice Atlas's ability to litigate its own rights and obligations. In contrast, the more comprehensive State Court Action permits a single decision maker to resolve all questions of liability and damages in their entirety, without prejudice to any party. The first factor, therefore, weighs heavily against the exercise of jurisdiction by this Court.

## 2. Clarification of the Legal Relations at Issue

The second *Grand Trunk* factor considers whether the district court's judgment would clarify the legal relations at issue. Analysis of this factor "is closely related to the first factor and

6

is often considered in connection with it[;] [i]ndeed it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Scottsdale*, 513 F.3d at 557.  The question is slightly more complicated where, as here, the declaratory judgment action does not entirely settle the underlying controversy.  In this Circuit, "a split has developed in [appellate] precedent concerning whether the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Id*. (*comparing Prewitt,* 208 Fed.Appx. at 397 (affirming exercise of jurisdiction where "declaratory action would clarify *only* the legal relationship between the insured and the insurer, and would not clarify the legal relationships in the state action") (emphasis in original); *Northland,* 327 F.3d at 454, *Green,* 825 F.2d at 1066; *and Odom,* 799 F.2d at 250 n.1 *with Travelers,* 495 F.3d at 272; *Abex,* 161 Fed.Appx. at 565; *and Bituminous,* 373 F.3d at 814 (finding factor two to weigh against exercise of jurisdiction where "declaratory judgment would clarify the legal relationship between [insurer] and [the insured employer]" but "would not clarify the legal relationship between [an injured worker] and [the employer] in the underlying state action" and the state court judgment would implicate insurer's liability) ).

If the relevant question is whether this Court's decision would clarify the legal relations presented in the declaratory judgment action, this factor is relatively neutral.  A judgment in this Court as to the scope of EBI coverage will clarify the legal relationship between Bluemile and Hartford only in part.  As discussed above, a declaratory judgment would not be sufficient to resolve definitively what monies are owed to Bluemile by Hartford.  Thus, although this Court's decision would be of some use in clarifying the legal relationship between insurer and insured, it

7

would not resolve the ultimate controversy between the two – and would certainly not be of greater use than Bluemile's parallel request for declaratory judgment in the State Court Action.

If the relevant question, however, is whether this Court's decision would clarify legal relations in the underlying state action, this factor weighs against the exercise of jurisdiction in this case. A federal declaratory judgment would not clarify the relationship between Bluemile and Atlas. Nor would it clarify whether Hartford has any right of subrogation against Atlas. Thus, even if Hartford were to win in this Court, all three entities would likely remain involved in litigation arising this same set of facts in a different forum.

Accordingly, the second *Grand Trunk* factor does not weigh in favor of granting jurisdiction in either formulation of the relevant standard.

### 3. Procedural Fencing

The third *Grand Trunk* factor considers whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata." *Travelers*, 495 F.3d at 271.  Here, each party has accused the other of improper procedural maneuvering.  Hartford filed its action in this Court on Friday, April 27, 2012. Bluemile filed its State Court Action the following Tuesday, May 1, 2012.  Hartford points to the later filing of the State Court Action as evidence of Bluemile's intent to undercut Hartford's right to seek federal declaratory relief.  Bluemile argues that it was Hartford who raced to the courthouse when Bluemile informed Hartford that the State Court Action filing was imminent. Bluemile offers a supporting attorney affidavit detailing a series of mediation attempts and discussions among opposing counsel in the months prior to the parties' filings.

The third factor "is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to

8

have done so for the purpose of acquiring a favorable forum.'" *Scottsdale*, 513 F.3d at 558 (quoting *AmSouth Bank v. Dale,* 386 F.3d 763, 788 (6th Cir. 2004)).  Thus, "[t]he question is ... whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." *Id*. (quoting *AmSouth*, 386 F.3d at 789). Nonetheless, the Sixth Circuit has warned that courts should be "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record."  *Id*. Moreover, a "district court should not deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress.'" *Id*. (quoting *Odom,* 799 F.2d at 250 n.1).

     Here, there is evidence in the record to support Bluemile's claim that Hartford intentionally engaged in procedural fencing.  Bluemile's attorney affidavit indicates that, as early as March 5, 2012, Hartford had notice of Bluemile's intent to file suit against both Hartford and Atlas if the coverage dispute was not resolved. The fact that Hartford and Blumile's respective actions were filed within two business days of each other also supports an inference of a race to choose the forum.  *Contrast Scottsdale*, 513 F.3d at 558 (finding no evidence of improper motive in filing where the federal declaratory judgment action was initiated several years after the initiation of a related state court action to which the insurance company was not a party).  While not definitive, the proffered evidence that Hartford knew it would have the opportunity to adjudicate its claims in state court makes it difficult to conceive of a motive for filing the instant action other than procedural fencing.  The third factor therefore also weighs against this Court's exercise of jurisdiction over this matter.

4. Increased Friction between Federal and State Courts

With regard to the fourth *Grand Trunk* factor, the Sixth Circuit has articulated three sub-factors to consider in determining whether the exercise of jurisdiction would increase friction between federal and state courts and improperly encroach on state jurisdiction. These are:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale*, 513 F.3d at 560 (quoting *Bituminous,* 373 F.3d at 814-15).

In this case, resolution of the factual issues in this case is not necessary to the resolution of the declaratory judgment action. Rather, the question before this Court is whether an alleged drafting error in the Policy affecting the durational limits on EBI coverage should be read out of the contract to avoid what Hartford characterizes as an absurd result. Nevertheless, the very same question has been presented in the State Court Action, creating the potential for inconsistent judgments. The Sixth Circuit has recognized that "the issue of the interpretation of [an] insurance contract [is a] question of state law with which the [] state courts are more familiar and therefore better able to resolve." *Bituminous,* 373 F.3d at 815. Moreover, "[s]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Id*. (quoting *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279 (6th Cir. 1990)). Therefore, although there is no "per se rule against exercising jurisdiction in actions involving insurance

10

coverage questions," *id*. at 812-13, this factor also weighs slightly in favor of declining jurisdiction in this case.

### 5. Availability of Alternative Remedy

The final *Grand Trunk* factor asks whether there exists an alternative remedy that is better or more effective than the requested federal declaratory judgment. As discussed above, Bluemile's pending State Court Action includes a claim for declaratory judgment that raises precisely the same questions of contract interpretation presented to this Court. Therefore, Hartford can obtain the same declaratory relief in that action that it seeks here. Furthermore, as discussed above, state courts are best positioned to decide such questions of state law, particularly when they implicate the state regulatory province of insurance contracting.

Moreover, "[t]here is no reason to suppose that the alternate remedies available in state court would not adequately protect [Hartford's] interests." *Id*. at 816. Indeed, the Sixth Circuit has repeatedly "question[ed] the need for …declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner." *Id*. at 816-17 (quoting *Am. Home Assur. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986)). Given that there has been no suggestion that the Franklin County Court of Pleas would be incapable of fairly deciding the declaratory judgment questions presented in the pending State Court Action, this factor too weighs against this Court's exercise of jurisdiction.

In light of the facts and procedural posture of this case, all five *Grand Trunk* factors weigh, in varying degrees, against federal jurisdiction over Hartford's declaratory

11

judgment action.  This Court therefore, in its discretion, declines to exercise such jurisdiction.

### III. CONCLUSION

For the foregoing reasons, this Court **GRANTS** Defendant Bluemile's Motion and declines to exercise jurisdiction over this matter.  Plaintiff Hartford's declaratory judgment action is hereby **DISMISSED**.

**IT IS SO ORDERED.**

                                                                            s/Algenon L. Marbley
                                                                            **Algenon L. Marbley**
                                                                            **United States District Court Judge**

**DATE: March 15, 2013**